# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EDWARD O. ALLEN,

                Appellant,

v.

CHRISTOPHER C. FREUND,

                Appellee.

Case No. 16-CV-1222-JPS
Bankruptcy Case No. 14-02027-GMH

**ORDER**

      Appellant Edward O. Allen ("Allen") appeals an adverse judgment of the bankruptcy court. (Docket #1). The bankruptcy court held an adversary trial on Allen's claim that Appellee and debtor Christopher C. Freund ("Freund") committed fraud, ultimately finding in favor of Freund. This appeal, originally filed on September 12, 2016, was reassigned to this branch of the Court on March 15, 2017. The appeal has been fully briefed, and for the reasons stated below, the judgment of the bankruptcy court is affirmed.

## 1.    BACKGROUND

      In adversary proceeding 14-2027, United States Bankruptcy Judge G. Michael Halfenger heard a claim by Allen that Freund, who was in Chapter 13 bankruptcy proceedings, committed fraud against him in connection with the failed sale of a real estate parcel. Allen sought to prove fraud in order to establish that the debt he asserts Freund owes him would be considered non-dischargeable.

### 1.1    Fraud Claims and Section 523(a)(2)(A)

      Under 11 U.S.C. § 523(a)(2)(A), a debt is nondischargeable in bankruptcy to the extent it was obtained by "false pretenses, a false

representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The party objecting to discharge bears the burden to establish an exception to discharge by a preponderance of the evidence. *Goldberg Secs. Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992); *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

The three types of fraud contemplated by Section 523(a)(2)(A)— false pretenses, false representation, and actual fraud—are often analyzed separately. *See, e.g.*, *In re Jacobs*, 448 B.R. 453, 471 (Bankr. N.D. Ill. 2014). But generally, to prove that a debt is nondischargeable pursuant to Section 523(a)(2)(A), a plaintiff must show: "(1) that [the debtor] made a false representation or omission, which he either knew was false or made with reckless disregard for the truth; (2) that [the debtor] possessed an intent to deceive or defraud; and (3) that [the plaintiff] justifiably relied on the false representation [or omission]." *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010).

Under the broad umbrella of Section 523(a)(2)(A), courts entertain claims arising from overt misrepresentations, implied misrepresentations, courses of conduct intended to foster false impressions, and silence or concealment surrounding material facts. *See In re Reichartz*, 529 B.R. 696, 700–01 (Bankr. E.D. Wis. 2015); *see also McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) ("[F]raud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or suppression of truth.").

All types of Section 523(a)(2)(A) claims, however, require a showing of deceptive intent. *In re Kimzey*, 761 F.2d 421, 423 (7th Cir. 1985).

Fraud under Section 523(a)(2)(A) cannot normally be established if the misrepresentation or omission at issue relates to future promises. *James Cape & Sons Co. v. Bowles (In re Bowles)*, 318 B.R. 129 (Bankr. E.D. Wis. 2004); *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997). However, there exists a narrow exception where, at the time the promise was made, the debtor had no intention to perform the promised act. *In re Bowles*, 318 B.R. at 144.

### 1.2 The Facts Adduced at Trial

At a bench trial on the liability portion of Allen's claim held on February 11, 2016,[1] Judge Halfenger heard statements by Allen, acting *pro se*, and Freund's counsel. He also heard testimony from Allen, Freund, and John Hauer ("Hauer"), an employee of M&I Bank ("M&I"). The following facts are drawn from the findings of fact made by the bankruptcy court in an oral ruling handed down on September 1, 2016. *See* (Docket #17-1 at 11–39).

In 2004, Allen purchased a commercial office building located at 4117 North Green Bay Avenue in Milwaukee, Wisconsin (the "Property"). M&I held a first mortgage on the Property to secure a note. In 2005, Allen moved from Milwaukee to San Diego, California.

He remained current on his obligation to M&I until late 2009, when his financial situation became "precarious." *Id.* at 14. His ability to remain current on the mortgage "hinged on maintaining a steady stream of rental income from his tenant at the [Property]," and in 2009 his tenant moved

---

[1]Allen had made a request for a jury trial, but Judge Halfenger denied it as untimely and found that Allen had waived his jury trial right by filing a proof of claim in the underlying bankruptcy proceedings involving Freund. Allen does not challenge these findings.

out. *Id.* Beginning in 2010, he began making half-payments for several months. Thereafter, he was totally unable to make any further payments.

While endeavoring to stay current with M&I, Allen was likewise unable to keep abreast of his other obligations, including a debt he owed to Chase Bank and property taxes he owed to the City of Milwaukee. Chase Bank eventually obtained a money judgment against Allen and recorded a lien against the Property. The City of Milwaukee did the same in connection with the delinquent tax payments.

In early 2009, Allen listed the Property for sale due to the difficulty of managing it while living in California, "and also presumably due to his financial difficulties in regard to the [Property]." *Id.* at 15. He says he received only low-ball offers, not serious interest. Then, in September 2010, Freund sent Allen a letter stating that he was interested in purchasing the Property. The letter explained that Freund was not a developer, but was interested in "finding a larger place for himself." *Id.* It also stated that Freund was "aware of the past due taxes and pending building inspection orders." *Id.* In his letter, Freund suggested that "there may be a way around any other legal issues if there are any." *Id.* at 15–16.

In response, Allen reached out to Freund, and the two had a telephone conversation. During the call, Allen told Freund that he wanted to sell the Property for enough money to satisfy his three debts—the M&I mortgage note, the Chase Bank judgment lien, and the City of Milwaukee tax lien. Allen did not state a specific dollar amount for these debts. At the end of the conversation, Freund said he was interested in touring the Property.

Allen did some research on his prospective buyer. He learned from a local newspaper article that Freund had undertaken development

opportunities in the Milwaukee in the past. He satisfied himself that Freund was a bona fide prospective purchaser and therefore decided to travel to Milwaukee to show Freund the Property. They toured the Property together on October 9, 2010. At the time of their visit, the building was vacant, boarded-up, vandalized, and overgrown with vegetation.

After the tour, Freund told Allen that the Property met his needs and thus could be a suitable site for him. However, Freund, interested in getting a better deal, asked Allen if he thought that M&I could be convinced to take less than was owed on the mortgage note. Allen said he did not know.

The bankruptcy court noted that here, the parties' versions of events diverged. Freund testified that he asked Allen about the bank holding the mortgage note and that Allen mentioned the name of the M&I loan officer. Allen, however, said that Freund asked for the bank's contact information specifically. Allen further testified that Freund did not express interest in contacting Chase Bank. The bankruptcy court noted that "[u]ltimately, these differences don't matter and I accept Allen's description of the discussion." *Id.* at 17.

Soon thereafter, Freund approached Hauer, vice president of M&I, about the possibility of obtaining a better deal for the Property than what Allen owed. Judge Halfenger observed that Freund's "recall was imperfect" regarding his meeting with Hauer, but that it was clear that Freund asked Hauer whether M&I would consider a short sale of the Property. *Id.* Hauer rejected this suggestion. Hauer instead offered to sell Freund the note.

Freund remained in frequent contact with Allen throughout these negotiations with M&I, as evidenced in voicemail messages Freund left for Allen on November 11 and 13, 2010. In the messages, Freund told Allen that he had talked to M&I Bank and that events were in motion to purchase the note. He did not say that it was he who was the prospective buyer of the note.

On November 22, 2010, Freund, through his company, J. Crawford Investment, LLC ("J. Crawford"), acquired M&I's interest in the note and the mortgage for $10,500. That same day, Freund called Allen, telling him that he had bought the note from M&I and that this could help eliminate the obligation Allen owed to Chase Bank. The following day, Freund or his agent recorded the assignment of the mortgage in the Milwaukee County Register of Deeds office.

Allen "was not pleased with Freund's report and believed he had been tricked." *Id.* at 18. On November 29, 2010, Allen wrote a letter to Freund's attorney expressing his frustration with Freund's conduct and threatening to oppose foreclosure by seeking an injunction. However, Allen never actually pursued this course.

By December 3, 2010, the parties' relationship had "cooled." *Id.* Freund left another voicemail for Allen, indicating that a short sale was no longer an option and that Allen owed Freund—or more specifically, Freund's company, J. Crawford—over $100,000 on the note formerly held by M&I. J. Crawford initiated foreclosure proceedings in January 2011 and obtained a foreclosure judgment. Allen did not contest the foreclosure. J. Crawford subsequently quitclaimed its interest in the note to Freund and Freund then dissolved J. Crawford.

Allen then sued Freund in Milwaukee County Circuit Court in May 2012. Freund filed a bankruptcy petition under Chapter 13 in March 2013. Allen commenced an adversary proceeding against Freund in the bankruptcy court, alleging fraud. In August 2013, the bankruptcy court dismissed Freund's Chapter 13 bankruptcy case and the adversary proceeding because Freund failed to file his tax returns as required by a prior court order. Freund filed another Chapter 13 bankruptcy petition in October 2013, and Allen filed the instant adversary proceeding in January 2014.

### 1.3    The Bankruptcy Court's Ruling

On September 1, 2016, Judge Halfenger issued an oral ruling granting judgment in favor of Freund. *Id.* at 11–39. In the ruling, the bankruptcy court outlined the contours of Allen's claims, noting that throughout the proceedings, Allen accused Freund of committing two separate frauds. The first was that, based on the parties' September 10, 2010 telephone call and their conversation after the October 9, 2010 tour of the Property, Freund had orally agreed to buy the Property, accepting the condition that the sale price had to cover Allen's three debts. More specifically, Allen believed that Freund agreed to the buy the Property at a price sufficient to pay of Allen's debts if, as Freund said, it "met his needs." *Id.* at 23. Allen contends that this condition was satisfied once Freund indicated on October 9 that the Property met his needs. According to Allen, Freund should have paid him enough to extinguish all three of Allen's debts but only satisfied one-third of that bargain by buying the M&I note.

The bankruptcy court found that the facts underlying this theory did not amount to fraud. First, the court found that no agreement existed

between the men. The court noted that Freund never actually agreed to Allen's debt-satisfaction condition of sale and that Allen was "read[ing] a bit too much into Freund's decision to tour the property. The parties agree that they never discussed a price nor any other purchase terms that could lend support to Allen's claim of an agreement." *Id.* at 25. Furthermore, Freund testified that he had never agreed to purchase the Property, and Allen himself conceded as much in his own testimony at trial. The court found it "tellin[g]" that "Allen kept the property on the market" even after the September call and October tour. *Id.* Thus, in the court's view, an objective observer at the time of these events would not have drawn the conclusion, as Allen did in hindsight, that Freund had agreed to buy the Property. Consequently, Judge Halfenger concluded that no misrepresentation, omission, or other fraud contemplated by Section 523(a)(2)(A) had occurred.

Additionally, the bankruptcy court found that even if Freund's October 9 statement that the Property met his needs was a satisfaction of a condition precedent to the agreement to buy the Property, Wisconsin law does not recognize oral contracts to purchase real property. Allen, who had attended law school, testified that he understood this, and so he knew the deal was unenforceable as it stood on October 9. Thus, Allen suffered no misapprehension about the lack of enforceability of the alleged agreement. Moreover, even if the oral agreement was enforceable, reasoned the court, Freund's ultimate decision not to buy the Property was not fraud. It was, at worst, a breach of contract, which creates only a dischargeable debt.

The second of Allen's fraud theories focused on Freund's contact with M&I Bank. Here, Allen posited that during the post-tour

conversation on October 9, 2010, Freund indicated that he wanted to speak with M&I to negotiate a lower payoff amount for the mortgage note. Allen, in reliance on the representation that Freund would make a deal on his behalf, obtain a short sale,[2] and pay off Allen's other debts, gave Freund the contact information for the appropriate bank official.[3] At trial, Allen contended that Freund's decision to buy the M&I note without satisfying the Chase Bank or City of Milwaukee debts meant that Freund had only performed one-third of his promise. In Allen's view, Freund's actual purpose in questioning Allen about the bank was to learn the identity of the loan officer and buy the note without paying Allen enough to pay off his other debts. Failing to disclose this ulterior motive was, according to Allen, fraudulent.

However, the bankruptcy court found credible Freund's assertion that his purpose in going to M&I was to simply see if the bank would take less to retire the mortgage debt. This was consistent with what Freund actually told Allen he was going to do and was consistent with Hauer's testimony about his conversation with Freund. In the end, it was M&I's

---

[2]Allen admitted at trial that the parties never used the phrase "short sale" during this conversation. He merely understood Freund's inquiry to be directed at seeking a short sale.

[3]The parties disputed whether Freund asked for the contact information or Allen volunteered it. Judge Halfenger found the dispute immaterial. First, it was not disputed that Freund inquired about whether Allen thought the bank would take less. Second, Allen did not press at trial the argument that the fraud arose specifically from Freund requesting the loan officer's contact information. Indeed, the contact information for the mortgage holder was a public record, so it was not as though Allen divulged a secret in reliance on Freund's alleged fraud. Additionally, the public nature of the information meant that Allen suffered no identifiable injury by giving Freund the contact information, even if he was truly duped into doing so.

lack of interest in a short sale or otherwise discounting the debt that derailed Freund's efforts, not Freund's dissembling. Moreover, Judge Halfenger credited Hauer's representation that it was he, not Freund, who first suggested that Freund should buy the note outright. Thus, the court concluded that Freund did not approach M&I with a plan to buy the note, and therefore he did not fraudulently omit such information in his statements to Allen.

Nor was Freund liable for failing to mention to Allen that M&I was interested in selling the note to him. Judge Halfenger observed that in the context of an arm's-length business transaction regarding sale of the Property, Freund was under no obligation, whether by fiduciary duty or otherwise, to disclose this information or correct misimpressions Allen may have harbored. To the contrary, despite Allen's hope that Freund would speak with M&I only to negotiate a lower payoff amount for the note, Freund "neither said that nor said anything that would have left an objective. . .observer to draw [that] conclusion[.]" *Id.* at 30. Moreover, Freund informed Allen as soon as he purchased the note, which clarified any of Allen's misunderstandings. Thus, the court found that neither this theory nor the first established that any false pretense, misrepresentation, or actual fraud occurred as required by Section 523(a)(2)(A).

Though this was enough to dispose of the case, Judge Halfenger made additional findings as to the other elements of Allen's claims. First, he found that Freund lacked the necessary intent to deceive or defraud Allen during the course of their dealings. As to the promise to buy the Property in an amount sufficient to satisfy all of Allen's debts (the first theory of fraud), Freund's failure to follow through would only be actionable if he did not intend to perform at the time he made the

promise. The court concluded that Allen had not produced sufficient evidence to support this view, finding credible Freund's testimony about his intentions.

As to the promise to negotiate a lower payoff amount with M&I (the second fraud theory), the court likewise concluded that Freund was credible when he testified that he believed that Chase Bank could have written off Allen's debt to it based on its status as junior lienholder. Further, Freund credibly testified that he believed the delinquent taxes would be his responsibility once he bought the Property. Allen also operated under the belief that the property taxes would follow the Property, not him. Thus, the court believed Freund when he asserted that in acquiring the note, he thought he was acting in Allen's interests and moving toward eliminating Allen's two other debts. That Freund was mistaken about the status of the Chase Bank and City of Milwaukee debts was inconsequential to his intent at the time. Nor were Freund's later actions—telling Allen about his discussions with M&I, the purpose of buying the note, and how it might help Allen—consistent with someone trying to deceive.

Finally, the bankruptcy court assessed whether Allen established the third element of his fraud claim: justifiable reliance. First, Allen suggested that he relied on Freund's statements before providing the M&I loan officer's contact information. But the court concluded that despite the sincerity of Allen's belief that he and Freund had "the workings of an agreement" as of October 9, his reliance on that belief was not justifiable. *Id.* at 34. Allen's legal education and testimony regarding the statute of frauds amply demonstrated that he could not have justifiably relied on the existence of an oral contract for the sale of the Property. Indeed, Allen

testified that he thought the negotiations as of October 9, 2010 were at the point where they could be reduced to written form; this showed Judge Halfenger that even Allen thought that the sale contract was not yet completed. Furthermore, as discussed above, the court credited Freund's efforts to keep Allen abreast of the negotiations over the note with M&I and the eventual purchase of the note.

Moreover, the court determined that Allen, by threatening in December 2010 to sue Freund if he failed to buy the Property, knew or should have known that Freund was thereafter not going to purchase the Chase Bank or City of Milwaukee debts, or pay an equivalent amount. Considering that thereafter Allen continued to market the property to prospective buyers, the court found that Allen could not claim justifiable reliance on any of Freund's representations or omissions. Similarly, the court found justifiable reliance lacking as to Allen's claim that he would not have flown to Milwaukee to show the Property absent Freund's statements, since Allen showed other interested buyers the Property during the same October 2010 tour. He also continued to market the Property and represented that he had other parties interested in the Property after this time.

Summing up the case, Judge Halfenger observed that "Allen's hopefulness that he could resolve his financial problems surrounding the [Property] through a deal with Freund is subjectively understandable, but any reliance on Freund's statement or conduct to achieve an outcome that paid off all of Allen's debts on the [Property] was not objectively justifiable under the circumstances." *Id.* at 36. Having concluded that Allen failed to establish any element of his fraud claim against Freund, he directed judgment to be entered in Freund's favor.

Judgment was entered on September 9, 2016. Allen filed a notice of appeal on September 12, 2016. Freund does not challenge this Court's jurisdiction under 28 U.S.C. § 158, which provides the district court with jurisdiction over appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a).

## 2.    STANDARD OF REVIEW

When adjudicating bankruptcy appeals, district courts apply a dual standard of review: the bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011); Fed. R. Bankr. P. 8013. Mixed questions of law and fact are subject to *de novo* review. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

The clear error standard is "highly deferential," *Cont'l Cas. Co. v. Symons*, 817 F.3d 979, 985 (7th Cir. 2016), and it "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently," *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, [the court] will not reverse its factual findings even if [it] would have weighed the evidence differently." *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008) (citation and quotation omitted); *Anderson*, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Clear error exists only where, for example, "trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence." *EEOC v. Sears Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir. 1988).

3.      **DISCUSSION**

Allen's appeal challenges almost exclusively Judge Halfenger's factual findings. Though it is possible to establish that a bankruptcy court clearly erred in finding certain facts, Allen has not met that high threshold here. Nor do Allen's legal positions have any merit. As a result, the order and judgment of the bankruptcy court must be affirmed. The Court will first address the claims directed at alleged fact-finding errors, then the purported legal errors.

###      3.1      The Bankruptcy Court's Findings of Fact Are Not Clearly Erroneous

As noted above, the bulk of Allen's appeal is directed at complaining that Judge Halfenger did not believe his version of the story underlying this case. That much is obvious from Judge Halfenger's factual findings, but Allen's disagreement is not in itself a reason for reversal.

Initially, the Court notes that much of Allen's briefing consists of reproducing lines of the transcript of the September 1, 2016 hearing in which Judge Halfenger rendered his decision on Allen's claim. *See* (Docket #17 at 16–21). Allen then interposes his own stream-of-consciousness gloss on the judge's findings between these quotations. *Id.* Allen's commentary usually cites no evidence; it is simply his unsworn diatribe on what he believes the correct factual finding should have been. In light of the deferential standard of review, Allen's presentation is undoubtedly insufficient. *Freeland*, 540 F.3d at 729. Moreover, even if evidence exists to support Allen's contentions, this Court is not obligated to scour the voluminous record to find it. *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."). Thus, to the extent Allen cites no evidence to

support his view of the facts he hoped Judge Halfenger would find, the Court has simply disregarded it.

Having set those matters to the side, there remains precious little by way of actual evidence to contradict the bankruptcy court's findings, and that evidence fails to convince this Court that those findings were clearly erroneous. Allen's complaint is that the bankruptcy court credited the wrong testimony and drew the wrong inferences from the facts. But none of the evidence Allen proffers shows that those findings were "implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence." *Sears*, 839 F.2d at 309. Rather, Allen simply wishes to supplant the judge's view of the facts with his own. Granting Allen the assumption that his view and the judge's are equally permissible, this Court cannot gainsay the bankruptcy court on appellate review. *Anderson*, 470 U.S. at 573. It was Judge Halfenger's province to review the evidence as it was presented at trial, listen to the testimony, and assign credibility to the witnesses.

Allen does no more than point to a piece of evidence and say only his view of it makes sense. For instance, he claims that a voicemail message he received from Freund about getting rid of the Chase Bank debt represented some sort of promise that Freund would work only to that end. *See* (Docket #17 at 18). As Judge Halfenger saw it, Freund merely offered to help. Once Allen lost his temper over Freund's purchase of the M&I note, Freund decided not to help anymore. This is not an unreasonable view of the facts, much less one that is clearly erroneous. *Anderson*, 470 U.S. at 574.

Likewise, at times Allen asks this Court to disbelieve the testimony of witnesses, including Hauer, because the testimony was unfavorable to

him. (Docket #17 at 31–32). Allen alleges, without evidentiary support, that Hauer must have been lying in collusion with Freund. *Id.* The bankruptcy court, which listened to Hauer's testimony and observed his demeanor at trial, was not remiss in disregarding Allen's view that Hauer was "definitely leaning toward favoring Defendant Freund." *Id.* at 31; *see also* (Docket #22 at 3).

Allen's threadbare presentation obviates the need to review each of his factual disputes in granular fashion. On its review of the record, the Court detects no reversible error in the bankruptcy court's factual findings.

### 3.2 The Bankruptcy Court Made No Reversible Legal or Evidentiary Error

As his factual disputes are light on evidence, so are Allen's claims of legal error light on law. As before, Allen applies what seems to be his own notions of the law based on his prior legal training, coupled with a misguided belief that his version of the facts controls. After reviewing the bankruptcy court's legal conclusions, the Court finds no reversible error.

#### 3.2.1 First Theory: Fraud, Not Breach of Contract

First, Allen claims that the bankruptcy court erred in its assessment of his first theory of fraud—*i.e.*, Freund's refusal to abide by his oral agreement to buy the Property in an amount sufficient to pay the M&I, Chase Bank, and City of Milwaukee debts. Allen stresses that his theory is one of fraud, not breach of contract, and that Judge Halfenger erred in focusing on contract formation issues. *See, e.g.*, (Docket #17 at 15). Yet Allen then proceeds to opine on the contract issue, arguing that the statute of frauds did not apply to the agreement to purchase the Property. *Id.* at 21–22. Of course, as a sale of an interest in land, it does apply. Wis. Stat. §

706.02; *Trimble v. Wis. Builders, Inc.*, 241 N.W.2d 409, 413 (Wis. 1976). Allen, however, believes that several exceptions make the statute inapplicable, including promissory estoppel, admission, and various equitable doctrines. (Docket #17 at 21–26).

Allen's argument misses the real point of the statute-of-frauds analysis. It is true that this case is about alleged fraud, not breach of contract. *Id.* at 22. But the two go hand-in-hand here since, as Judge Halfenger noted, Freund made no representations to Allen about buying the Property on which Allen could justifiably have relied. This is because Allen, who is trained as a lawyer, admitted that he knew that sale of the Property required written memorialization. *See In re Yotis*, 548 B.R. 485, 496 (Bankr. N.D. Ill. 2016) ("Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of the creditor and debtor."); *Field v. Mans*, 516 U.S. 59, 71 (1995). Whatever Freund's later conduct may have been, the dispositive issue for Allen's first theory is whether the elements of a Section 523 fraud claim were satisfied at the time of Freund's statements on October 9, 2010. Allen has not come forward with evidence supporting that conclusion. Thus, Allen's attempt to resuscitate the sale contract based on exceptions to the statute of frauds is irrelevant and requires no further discussion.

This dovetails into Allen's second, broader assertion of error: that there was an enforceable agreement for sale of the Property, including as a term that Freund would pay a sufficient amount to extinguish Allen's three debts on the Property, which Freund did not make good on. *Id.* at 26–28. Yet the parties' discussions about sale terms were not sufficiently definite to give rise to a contract for sale. For instance, law is well-settled

in Wisconsin that a price term can be left indefinite only where the parties agree upon a "reasonable" price or agree to some practicable method of determining the final price. *Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc.*, 685 N.W.2d 564, 567 (Wis. Ct. App. 2004).

Neither circumstance exists here, as the evidence revealed that Freund never actually promised to buy the Property or to pay an "equivalent" price, the term Allen uses to denote his desired price. *See* (Docket #17 at 28). In short, Allen puts more weight on Freund's conduct and statements than they can bear. Because Freund never agreed to the essential terms of sale, he cannot have committed fraud by failing to abide by any such terms. *See Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 75 (Wis. 1996) ("Vagueness or indefiniteness as to an essential term of the agreement prevents the creation of an enforceable contract, because a contract must be definite as to the parties' basic commitments and obligations.").

In any event, had Freund breached a promise to buy the Property, this was, at most, a breach of contract, not fraud, since the evidence showed that Freund intended to keep his promise when he first made it. *See United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) ("[F]ailure to honor one's promise is (just) breach of contract, but making a promise that one intends not to keep is fraud[.]"); *Davis*, 638 F.3d at 554. Consequently, the bankruptcy court did not err in concluding that Allen did not prove his first fraud theory.

### 3.2.2   Second Theory: Failure to Disclose

Allen next challenges Judge Halfenger's rejection of his second theory of fraud—that Freund violated a duty to him by failing to disclose that he negotiated with M&I to purchase the bank's note. *See* (Docket #17

at 29–38). Initially, Allen contends that Freund did not go to M&I to seek a short sale and that Hauer lied when he so testified. *Id.* at 29, 31. His belief is not supported by the evidence. *See supra* Part 3.1.

Alternatively, Allen claims even if Freund went to M&I with a purpose to ask about a short sale, he also went there with a second, ulterior purpose: to purchase the note. This was impermissible, according to Allen, because Freund was acting as his fiduciary or agent and buying the note for less than Allen wanted would be detrimental to Allen's interests.

To support this theory, Allen strenuously urges that an affirmative misrepresentation is not required to make out a claim of actual fraud under Section 523. *See* (Docket #17 at 30). The case he cites, *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1587 (2016), so holds. But Judge Halfenger did not overlook the fact that an omission can support a Section 523(a)(2)(A) claim. (Docket #17-1 at 23) (citing *Husky*, 136 S. Ct. at 1590). Rather, the bankruptcy court rightly concluded that under the circumstances presented, no duty to disclose arose between Freund and Allen.

Allen's theory is fundamentally flawed because it rests upon the untenable claim that Freund was Allen's agent. *See* (Docket #17 at 31–35). Essentially, Allen believes that because the parties had reached a sale agreement (which they had not), and because Freund offered to go to the bank to inquire about a short sale (which he in fact did), Freund was under a duty not to act against Allen's interests. *Id.* at 35. Allen cites no pertinent authority to support this novel view of agency.

To the contrary, the bankruptcy court's finding that there was no such relationship is aligned with *Smith v. Duffey*, 576 F.3d 336, 338 (7th Cir.

2009), cited by Allen, which found that a duty to disclose can arise where "the defendant's silence would mislead the plaintiff because of something else that the defendant had said." The facts adduced at trial show that Freund went to M&I Bank to do just what he said: seek a short sale, which would be favorable to Allen. His silence as to additional matters, such as his negotiations to buy the note himself, was not misleading.

Allen's argument implicitly concedes the weakness of his position. He claims that even if no contract for sale of the Property had been formed, "expectations [had] been set." (Docket #17 at 37). Allen ignores the real dynamic between the parties—that of an arm's length business transaction for the purchase of real property. In such circumstances, Freund had no agency or fiduciary duty to correct Allen's misapprehensions. Allen's hopes and wishes are not the stuff of legal duty. *See Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) ("While an agency relationship can be created by contract or by conduct, not all contracts create agency relationships and not all conduct creates agency relationships."). As a result, the Court concludes that the bankruptcy court did not err in rejecting both of Allen's theories of fraud.[1]

---

[1]At the end of his opening brief, Allen appears to argue that there is circumstantial evidence supporting both of his fraud theories, including Freund's statements to him, his course of conduct with respect to M&I, and his voicemail messages to Allen. (Docket #17 at 45–53). This discussion is largely duplicative of his prior arguments. Moreover, it consists almost entirely of bare factual and legal assertions, unconnected by any discernable argument. The Court's task is not to construct the bridges between the facts and the law, even for a *pro se* party. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Thus, the Court will not expend additional space independently assessing this portion of Allen's argument.

### 3.2.3 The Other Elements of Fraud Are Lacking

Because of this conclusion, this Court, like the bankruptcy court, need not engage in a lengthy analysis of the other elements of Allen's fraud claim. Nevertheless, it is worth noting that Allen's arguments on those other elements—intent to deceive and justifiable reliance—are perfunctory. *See* (Docket #17 at 37–41). This alone would be grounds for affirmance. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

Regardless, his arguments, such as they are, are without merit. His claim that Freund acted with nefarious intent rests exclusively on his view of the circumstantial evidence he presented to the bankruptcy court. (Docket #17 at 38–39). Courts may infer the requisite intent to deceive under Section 523(a)(2)(A) from the totality of the circumstances. *In re Logan*, 327 B.R. 907, 911 (Bankr. N.D. Ill. 2005) (citing *In re Cohn*, 54 F.3d 1108, 1118–19 (3d Cir. 1995)). As Allen admits, the bankruptcy court, in crediting Freund's testimony about his lack of deceptive intent, was "taking his word on it." (Docket #17 at 38). This is something the bankruptcy court, as the finder of fact, was entitled to do, and Allen offers no clear basis on which to question that decision. *See Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 848 (7th Cir. 2005) (noting that appellate courts afford "deference to the trial court's assessment of witness credibility," and recognizing that a trial court's credibility determination "can virtually never amount to clear error"). Because Allen has not shown that Freund harbored deceptive intent, his nuanced theories of fraud take him nowhere. *Kimzey*, 761 F.2d at 423.

Likewise, as to his claim of justifiable reliance, Allen's argument echoes those rejected above. *See* (Docket #17 at 39–41). To reiterate, Allen's legal training meant that he could not justifiably rely on an oral contract

for sale of the Property. *Ojeda*, 559 F.3d at 717 (if cursory examination or investigation would correct a misrepresentation, there can be no justifiable reliance upon it); *Yotis*, 548 B.R. at 496. Moreover, Allen's belief that Freund was going to secure him a debt-free existence did not give rise to a duty in Freund to make that so. Thus, the Court affirms the bankruptcy court on Allen's failure to establish these necessary elements of his claim.

### 3.2.4 Evidentiary Rulings

In closing, Allen sets forth a litany of alleged evidentiary errors that occurred during trial, but the Court need not dwell long on them. A bankruptcy court's evidentiary rulings are reviewed for an abuse of discretion. *In re Salem*, 465 F.3d 767, 778 (7th Cir. 2006). The proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but rather whether any reasonable person could agree with the lower court. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

First, Allen claims that he was not permitted to call Hauer as an adverse witness even though, in his view, Hauer's testimony ended up being evasive, argumentative, and false. (Docket #17 at 41). Allen's two-sentence argument on this point cites no applicable authorities, and on the Court's on review of the relevant law, it finds no error in the bankruptcy court's decision. In particular, Allen has not demonstrated that Hauer was identified with Freund, as required by Federal Rule of Evidence 611(c)(2). Fed. R. Evid. 611(c)(2) (allowing a party to ask leading questions "when [he] calls a hostile witness, an adverse party, or a witness identified with an adverse party"). Whether his testimony ultimately favored Freund's position is not the operative inquiry, and so the bankruptcy court's ruling was not an abuse of discretion.

Second, Allen alleges that the bankruptcy court erred in excluding evidence of unpaid property taxes to impeach Freund's credibility. (Docket #17 at 41). During trial, however, Allen mistakenly told the court that he wanted to use the documents to show the witness' bad character, which is, of course, not permitted by the Rules of Evidence. *See* Fed. R. Evid. 404. Allen now clarifies that he wanted to use the evidence for impeachment, but Judge Halfenger cannot have erred in ruling on Allen's proffer as presented at trial. Further, the bankruptcy court rightly noted that the exhibit Allen wanted to use was not disclosed on the trial exhibit list. Finally, Allen withdrew the proffer, so it is doubtful he preserved the issue for appellate review. *See Divane v. Krull Elec. Co., Inc.*, 194 F.3d 845, 849 (7th Cir. 1999).

Third, Allen contends that the bankruptcy court denied him the ability to put certain photographs of the Property into evidence. (Docket #17 at 41–43). Allen's reasoning here is difficult to follow, but it appears that he wanted to show that Freund had lied about the condition of the Property, claiming it was in disrepair, in order to get a good price for the note from M&I. *Id.* at 42–43. The photographs were allegedly taken by Freund himself after the October 2010 tour, showing the Freund had trespassed on the Property to further his plan of deceit. *Id.* at 43. Allen says that his purpose was not to show Freund's prior bad acts, as prohibited by Rule 404, but to impeach Freund's credibility and "show intent." *Id.* at 42. Without addressing Allen's workaround of the prohibition in Rule 404, this Court affirms Judge Halfenger's alternate conclusion that the photographs were not sufficiently probative of the issues before the court, including Freund's credibility and intent, to warrant admission. *See* (Docket #15 at 264–271) (finding that the court

would not entertain examination on matters "that are otherwise irrelevant on the off chance that he may say something that you view as impeachable"); Fed. R. Evid. 403. Further, Allen withdrew this proffer. *Id.* at 264. Even if he sensed the bankruptcy court's displeasure with his tactic, Allen was required to press it in order to preserve it for this Court's review. *See Divane*, 194 F.3d at 849.

Fourth, Allen claims that the bankruptcy court and the defense had a "pretty disturbing" discussion on the record, which Allen viewed as a "strategy meeting" wherein the court fed arguments to Freund's counsel. (Docket #17 at 43–44). The Court reads no such thing in the transcript. During the cited portion of the hearing, defense counsel was making his closing argument, and the bankruptcy court interrupted him with questions about how the relevant legal principles applied to the facts. Even if hearing the court's comments left Allen feeling resigned to defeat, as he claims, that does not mean that the court committed error or harbored bias against him.

Fifth, Allen challenges Freund's counsel's argument that because Allen was trained as a lawyer, he could not have been laboring under a misapprehension about the status of the parties' contract negotiations, as discussed above. *Id.* Again, he cites no authority for his position. In any event, whether Allen justifiably relied on Freund's conduct and statements is sensitive to his specific characteristics and circumstances; thus, his legal training is indeed relevant. *Yotis*, 548 B.R. at 496; *Field*, 516 U.S. at 71.

Finally, the Court notes that Allen raised several points which do not appear to be allegations of actual legal error. These include: (1) that he was ambushed on the day of trial with the revelation that Hauer would be

represented by counsel, (Docket #17 at 44); (2) that Freund's counsel was allowed to lead him during cross examination, *id.* at 44–45; and (3) that the court stated that Allen was not "owed a debt," *id.* at 45. He does not coherently identify any legal error the bankruptcy court allegedly committed in any of these instances, nor does he cite any legal principle applicable to the court's decisions. He simply seems angry, something this Court cannot remedy.

In sum, Allen's alleged evidentiary errors are wholly without merit and represent no basis on which to reverse the bankruptcy court's judgment.

**4.     CONCLUSION**

Allen failed to convince the bankruptcy court to accept his version of the events that transpired between him and Freund. On appeal, Allen does not get a second bite at that apple; he was required to demonstrate that the bankruptcy court's fact-finding was clearly erroneous. This he did not do, and the Court must, therefore, affirm the judgment of the bankruptcy court.

Accordingly,

**IT IS ORDERED** that the judgment of the bankruptcy court in this matter be and the same is hereby **AFFIRMED**; and

**IT IS FURTHER ORDERED** that this matter be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of June, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge